UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHRISTINE B.,[1] | : | Case No. 3:21-cv-308 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Christine B. brings this case before the Court challenging the Social Security Administration's denial of her application for Supplemental Security Income. This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

**I.    Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for Supplemental Security Income on December 16, 2013 and for Disability Insurance Benefits on January 15, 2014,[2] alleging disability due to several impairments, including insulin dependent diabetes, bipolar disorder, and anxiety. (Doc. #7, *PageID* #242). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon. ALJ Kenyon concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (Doc. #7-9, *PageID* #974-85). The Appeals Council denied Plaintiff's request for review, and she filed a previous suit in the United States District Court for the Southern District of Ohio. The Court remanded the case to the Commissioner. *Burke v. Berryhill*, No. 3:16-CV-485, 2018 WL 1000006 (S.D. Ohio Feb. 21, 2018) (Ovington, M.J.). After the Appeals Council issued a remand order, ALJ Kenyon held another hearing and issued a decision concluding that Plaintiff was not under a disability. (Doc. #7-9, *PageID* #s 969, 994-1004). Upon Plaintiff's written exceptions, the Appeals Council remanded the case to a new ALJ. *Id.* at 1015-18. ALJ Kevin R. Barnes held a telephonic hearing in March 2021. *Id.* at 883-909. Thereafter, ALJ Barnes issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

    Step 1:    Plaintiff has not engaged in substantial gainful employment since December 16, 2013, her application date.

---

[2] In the prior administrative decision from December 18, 2015, the ALJ dismissed Plaintiff's Disability Insurance Benefits claim. (Doc. #7-9, *PageID* #975).

| | | |
|---|---|---|
| Step 2: | | She has the severe impairments of obesity; degenerative disc disease, cervical spine; scoliosis; asthma; chronic obstructive pulmonary disease (COPD); mild sleep apnea; diabetes; depression; and anxiety. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work… except: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no operation of automotive equipment; (5) no concentrated exposure to temperature extremes, respiratory irritants, or excess humidity; (6) limited to performing unskilled, simple, and repetitive tasks; (7) occasional contact with coworkers and supervisors; (8) no public contact; (9) no fast-paced production work or jobs involving strict production quotas; (10) limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next." |
| | | She is unable to perform any past relevant work. |
| Step 5: | | She can perform a significant number of jobs that exist in the national economy. |

(Doc. #7-8, *PageID* #s 863-72). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since December 16, 2013, the date the application was filed. *Id.* at 872.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-8, *PageID* #s 861-70), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff argues that the ALJ erred by not properly evaluating the opinions of treating pulmonologist, Robert Margolis, M.D., and by relying instead on the opinion of testifying non-examiner, James Washburn, D.O. (Doc. #8, *PageID* #s 2251-53). The Commissioner maintains that the ALJ properly assigned significant weight to the opinion of Dr. Washburn and appropriately assigned little weight to Dr. Margolis. (Doc. #9, *PageID* #s 2257-59).

Plaintiff's treating pulmonologist, Dr. Margolis, completed interrogatories in July 2015. (Doc. #7-7, *PageID* #s 616-22). Dr. Margolis indicated that he treated Plaintiff for COPD, asthma, pulmonary nodules, and hemoptysis. *Id.* at 617. He opined that she could not withstand the pressure of meeting normal standards of work productivity and accuracy without significant risk of decompensation or worsening of her impairments because she "experiences severe dyspnea-on-exertion, [and is] unable to walk and carry boxes …." *Id.* For the same reasons, she could not demonstrate reliability or complete a normal workday or workweek without interruption from symptoms, and she could not perform at a consistent pace without unreasonable numbers and lengths of rest periods. *Id.* at 618. Dr. Margolis further opined that, because of Plaintiff's obesity and COPD, she could frequently lift and/or carry five pounds and could not stand or walk at all. *Id.* at 618-19. She could frequently balance and could never climb, stoop, crouch, kneel, or crawl. *Id.* at 619. Her ability to reach, handle, or push/pull were affected by her impairments; and she was restricted from exposure to moving machinery, chemicals, temperature extremes, dust, fumes, and humidity. *Id.* at 620. He noted that Plaintiff's asthma would be worsened by exposure to humidity, dust, or fumes. *Id.* at 621. He estimated Plaintiff would be absent from work three or more days per month because of her impairments and treatment. *Id.* at 622. Dr. Margolis concluded Plaintiff does not have the residual function ability to do sedentary work on a sustained basis. *Id.* at 621.

Dr. Washburn testified at the administrative hearing before ALJ Barnes on March 16, 2021. (Doc. #7-8, *PageID* #s 891-99). Dr. Washburn agreed that Plaintiff's severe impairments include asthma, COPD, diabetes, depression, and anxiety. *Id.* at 893. He opined that Plaintiff's

impairments do not meet or equal any listing. *Id.* at 893-94. In discussing whether Plaintiff's impairments met listing 3.02 (chronic lung disease), Dr. Washburn recognized that Plaintiff does have "significant pulmonary disease." *Id.* at 894. However, he noted that there are no documented hospitalizations for exacerbation of COPD. *Id.* at 894. Further, Dr. Washburn noted that although the results from Plaintiff's pulmonary function testing in 2015 and 2016 were low, there were issues with the accuracy of the tests. *Id.* at 894. Specifically, after the six-minute walk without oxygen following the test, Plaintiff had an oxygen saturation of 95%. *Id.* Moreover, Dr. Washburn explained, a person with results as low as Plaintiff's 2015 and 2016 tests would have profound shortness of breath and minimal exertional abilities. *Id.* at 894. According to Dr. Washburn, that was not consistent with Plaintiff's level of functioning, as set forth in the evidence of record. *Id.* at 894. The results from a pulmonary function test in 2020, however, were more consistent with her condition. *Id.* at 894. In addition, the individual who conducted the 2015 and 2016 tests indicated that there was poor effort by Plaintiff. *Id*. Dr. Washburn later explained that "poor lack of effort, for whatever reason" by a patient could result in a false pulmonary function test. *Id.* at 895. Additionally, one of Plaintiff's pulmonary function test results indicated a "short blow." *Id.* at 895; *see* Doc. #7-7, *PageID* #448. A short blow occurs when the patient does not take enough air in. (Doc. #7-8, *PageID* #895). Dr. Washburn explained, "When you take these pulmonary function test, they tell you to inhale, inhale, and then, blow, blow. The following blow is either the result of inaccurate intake of air, trapping of air, or poor effort. It can be any of those. You need a good, sustained blow to get an accurate test." *Id.* at 895-96.

Dr. Washburn also testified about Plaintiff's work limitations. He opined that Plaintiff could frequently lift or carry up to ten pounds. *Id.* at 896. She could walk for two hours per day. *Id.* She could occasionally squat, bend, stoop, crawl, and climb stairs. *Id.* She should avoid any hazardous activities and exposure to pulmonary irritants, extreme heat and cold, and humidity. *Id.* at 896-97.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry*, 741 F.3d at 723.[3]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

---

[3] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Plaintiff's application was filed prior to the effective date of March 27, 2017, and accordingly, the treating physician rule is still applicable to her claims.

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

The ALJ declined to give controlling weight or great deference to Dr. Margolis' opinion and instead assigned it "little weight." (Doc. #7-8, *PageID* #s 869-70). The ALJ recognized that Dr. Margolis was Plaintiff's treating physician. However, he reasonably discounted Dr. Margolis' opinion because it was inconsistent with "the overall objective evidence." *Id.*; *see* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Specifically, the ALJ found that Dr. Margolis' opinion was inconsistent with the testimony of Dr. Washburn, the record-reviewing consultants' opinions, "the level of care required by [Plaintiff], which has been conservative care,"[4] and Plaintiff's noncompliance with treatment by continuing to smoke cigarettes. (Doc. #7-8, *PageID* #s 869-70). The ALJ also discounted Dr. Margolis' opinion because he did not address Plaintiff's "poor effort" during her pulmonary function tests and how it affected the accuracy of the tests. *Id.*; *see* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a

---

[4] Although Plaintiff asserts that the ALJ improperly considered her conservative care, Dr. Washburn's testimony—that there were no documented hospitalizations for exacerbation of COPD—supports the ALJ's conclusion. (Doc. #7-8, *PageID* #894).

medical opinion, the more weight we will give that medical opinion."). Substantial evidence supports the ALJ's reasons for assigning "little weight" to Dr. Margolis' opinions.

The ALJ reasonably relied on the opinion of the medical expert Dr. Washburn. Indeed, he assigned Dr. Washburn's opinion "significant weight" because it was consistent with "the overall objective evidence." (Doc. #7-8, *PageID* #870). Further, the ALJ found that Dr. Washburn, unlike Dr. Margolis, explained that there were issues with the accuracy of Plaintiff's 2015 and 2016 pulmonary function tests. The ALJ noted that, specifically, Dr. Washburn testified that Plaintiff gave poor effort during the tests, and poor effort by a patient could result in a false test. *Id.* at 867-68. Further, Dr. Washburn explained that a person with test results as low as Plaintiff's would have minimal exertional abilities at rest, and that was not consistent with the evidence in the record. As recognized by the ALJ, Plaintiff worked as a dishwasher in 2019; reported "living on a 10 acre full functioning farm with quite a few animals to care for"; and admitted that she did not want to participate in physical therapy because she was too busy being the sole provider for her daughter and caring for her farm animals. *Id.* at 868 (citing Doc. #7-14, *PageID* #s 1907, 1911, 1972). The ALJ concluded that Dr. Washburn's testimony was "sufficient … to supplement the record to cement a finding that [Plaintiff's] old pulmonary function test were inaccurate and cannot be relied upon …." *Id*. Instead, the ALJ relied on Plaintiff's 2020 pulmonary function test results. The 2020 test revealed Plaintiff had normal diffusing capacity, but the results could represent COPD. (Doc. #7-13, *PageID* #1877). The ALJ observed that Dr. Washburn testified that the 2020 results were consistent with other objective evidence, including no desaturation on a six-minute walk, and accurately reflect Plaintiff's level of functioning. Further, unlike the 2015 and 2016 tests, the

technician for the 2020 test indicated that Plaintiff gave good effort.  (Doc. #7-8, *PageID* #868) (citing Doc. #7-13, *PageID* #1876).

Plaintiff asserts that the ALJ erred in relying on the testimony of Dr. Washburn, a "Doctor of Osteopathy," because "there is no indication that Dr. Washburn is qualified to contradict the opinion of a pulmonologist like Dr. Margolis."  (Doc. #8, *PageID* #s 2252-53).  Certainly, a physician's specialty is one factor to consider when the ALJ weighs a medical opinion. 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").  However, Plaintiff has not presented any evidence that Dr. Washburn—who specializes in internal medicine—is not qualified to provide his opinion.  Although the ALJ did not specifically mention either physician's specialty, the ALJ provided good reasons for assigning "little weight" to Dr. Margolis' opinions and "significant weight" to Dr. Washburn's opinions.  *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148 (2019) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide "good reasons" for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion.") (citing *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(2)).

Ultimately, Plaintiff argues that the ALJ should have assigned more weight to Dr. Margolis' opinion than to Dr. Washburn's opinion.  However, the Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Bradley v. Sec'y*

*of Health and Human Serv.*, 862 F.2d 1224, 1228 (6th Cir. 1988); *Young v. Sec'y of Health and Human Servs.*, 787 F. 2d 1064, 1066 (6th Cir. 1986); *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "may not try the case *de novo*[;] nor resolve conflicts in evidence[;] nor decide questions of credibility." (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter,* 246 F.3d 762 772 (6th Cir. 2001). Rather, if the Commissioner's decision "is supported by substantial evidence, then we must affirm the [Commissioner's] decision[,] even though as triers of fact we might have arrived at a different result." *Elkins v. Sec'y of Health and Human Servs.,* 658 F.2d 437, 439 (6th Cir. 1981) (citing *Moore v. Califano,* 633 F.3d 727, 729 (6th Cir. 1980)). In this case, substantial evidence supports the ALJ's reasons for assigning "little weight" to Dr. Margolis' opinion and "significant weight" to Dr. Washburn's opinion. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148 (2019) ("The ALJ faced dueling opinions from two highly qualified medical experts and found Dr. Barnes's testimony more credible after assessing how well his testimony fit with the objective medical record—a determination she was fully empowered to make.") (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.")).

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 31, 2023                                                              *s/Peter B. Silvain, Jr.*
                                                                            Peter B. Silvain, Jr.
                                                                            United States Magistrate Judge